CHARLES E. JACKSON, EXECUTOR, vs. AIMEE E. ALSOP
ET AL.

*Third Judicial District, Bridgeport, October Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Although the object sought in the construction of wills is the intent of
the testator, it is nevertheless the intent as expressed in the language
used. If that is not ambiguous, either as to the nature of the estate
intended to be devised, or as to the person intended as the devisee,
no extrinsic evidence is admissible to show a different and unexpressed
meaning or intention upon the part of the testator.

A construction plainly required by the terms of a will, cannot be avoided
because it leads to intestacy in whole or in part.

A testatrix, by the fourth clause of her will, gave to A, whom together
with B she named as executors, certain real estate, to hold "to him
and his heirs and assigns forever." By the fifth clause she gave to A
and B, and to the survivor of them, the rest and residue of her estate,
"having full confidence that they will make such use and disposition
thereof" as would accord with her wishes. B subsequently dying,
the testatrix made a codicil giving the rest and residue to A, "having
full confidence" etc., as above ; but in the event that A should not
survive her, provided that "said rest and residue" should be divided
among her lawful heirs according to the laws of this State. A died
before the testatrix, and in a suit to construe the will it was held :—

1. That the expression "his heirs and assigns forever," following the de-
vise to A in the fourth clause, did not, when read in connection with
the codicil, create a substitutional devise in A's children on his death
before the testatrix ; but was used merely as a limitation descriptive
of the quality of the estate devised to A.

2. That by A's death before that of the testatrix, the gift to him lapsed
and became intestate estate.

3. That under the fifth or residuary clause, the legal heirs of the testatrix
took per stirpes and not per capita.

[Argued October 30th, 1895—decided January 6th, 1896.]

SUIT to determine the construction of the will of Clara P.
Alsop of Middletown, deceased; brought to the Superior
Court in Middlesex County and reserved by that court,
Shumway, J., upon the facts found, for the consideration and
advice of this court.

* Transferred from first judicial district.

The case is sufficiently stated in the opinion.

*Henry E. Burton*, for the plaintiff.

*Charles E. Perkins*, for Lucy C. and Charles R. Alsop.

*Harrison Barber Freeman*, for Elizabeth A. Hoppin, Henry Chauncey et al.

*John W. Alling*, with whom was *Nathaniel A. Prentiss* of N. Y., for Aimee E. Alsop, Joseph W. Alsop, 4th, et al.

*William B. Greenough* of Providence, for Charles A. and Clara A. Hoppin.

ANDREWS, C. J.　This is a complaint brought to the Superior Court for a construction of the will of Clara P. Alsop, late of Middletown, who died on the 28th day of February, 1894, seized and possessed of an estate consisting of both real and personal property.　Her will, duly executed to pass such estate, dated the 24th day of March, 1884, and codicils thereto, one dated May 4th, 1886, the other May 31st, 1887, was admitted to probate and is recorded in the proper records.　In said will the plaintiff was named as the executor. He duly qualified and is now acting as such executor.　The portions of said will necessary to be construed are as follows :—

"Fourth. I give and devise to my nephew, Joseph W. Alsop, aforesaid, my undivided one fourth interest in the real estate of my late father, Joseph W. Alsop, said real estate being the mansion house commonly known as No. 20 (twenty) Washington street in said city of Middletown, and also the dwelling-house now occupied by Dr. Edgerton, commonly known as No. 26 (twenty-six) Washington street aforesaid, together with all the lands connected with both of said houses; to have and to hold the said undivided fourth interest in said real estate to him the said nephew, Joseph W. Alsop, and his heirs and assigns forever."

The first codicil above referred to is immaterial; the second is as follows :—

" First. I do ratify and confirm said will as modified by said first codicil thereto, except so far as it may be inconsistent with this my second codicil.

" Second. As Frederick Chauncey, named in my said will, has died since the making thereof, I do hereby revoke the 'Fifth' item of said will, and I do substitute therefor, as follows, viz.:

" Fifth—All the rest and residue of my estate, of every name and description, whether real, personal or mixed, or whether in possession, reversion or remainder, I do give, devise and bequeath to Joseph W. Alsop, in said will named, having full confidence that he will make such use and disposition thereof as will be in accord with my wishes heretofore made known to him; and I do hereby appoint him my sole executor, and I direct that no probate bond be required of him. But if he do not survive me, then, and in such event, I give, devise and bequeath all the said rest and residue of my estate to be divided to and among my lawful heirs according to the laws of the State of Connecticut, and in such event also I appoint Charles E. Jackson, of Middletown aforesaid, to be my sole executor, but without any bonds being required of him."

Joseph W. Alsop, the devisee in said will and codicil, died in June, 1891, in the lifetime of the testatrix, leaving four children. The complaint prays for the answers to two questions : First, whether the devise in the fourth clause of said will to Joseph W. Alsop, lapsed by the death of said Joseph W. Alsop before the death of the testatrix. Second, whether under the residuary clause of said will the legal heirs of the testatrix are to take *per stirpes* or *per capita.* The Superior Court reserved the questions on the record for the advice of this court.

The general rule is that all devises are deemed to be lapsed, if the devisee dies in the lifetime of the testator. *Ballard* v. *Ballard*, 18 Pick., 41, 43. And when that happens, the

property devised falls into the residuum or becomes intestate estate, as the case may be. *Bill* v. *Payne*, 62 Conn., 140, 142.

If the devise in the fourth clause of the will is to Dr. Joseph W. Alsop and only him, it is conceded that it is lapsed. The contention is that there is a devise over,—a substitutionary devise to the children of Dr. Alsop; that the words at the close of the said fourth clause, to him the said nephew, Joseph W. Alsop, "and his heirs and assigns forever," when read in connection with the second codicil, is a devise to the children of Dr. Alsop in the event, which has happened, that he died before the testatrix. In support of this claim, certain parol evidence was offered at the hearing and received subject to objection. Whether or not the evidence was admissible is reserved for this court to determine. It seems to us that it was not admissible. In the interpretation of a will parol testimony may always be received to remove any ambiguity which may be found to exist in the words of description, either of the property intended to be devised, or as to the person intended to be the devisee. Here no such ambiguity is shown or claimed. The parol evidence was offered to show that the testatrix intended a different result from the one which the words of her will, taken in their primary sense, would indicate. In their primary sense these words are words of limitation only, calculated to describe the quantity of estate given to the devisee. They do not create a new estate in the heir of the devisee. The rule in respect to the admission of parol evidence to affect the interpretation of written instruments—a deed or a will—is very clearly stated by MR. JUSTICE COLERIDGE in the opinion he gave in *Shore* v. *Wilson*, 9 Cl. & Fin., 355, 525. He says: " It is unquestionable that the object of all exposition of written instruments must be to ascertain the expressed meaning or intention of the writer, the expressed meaning being equivalent to the intention ; and I believe the authorities to be numerous and clear . . . . that where language is used in a deed which in its primary meaning is unambiguous, and in which that meaning is not excluded by the context, and is sensible with reference to the extrinsic circumstances

in which the writer was placed at the time of writing, such primary meaning must be taken, conclusively, to be that in which the writer used it; such meaning, in that case, conclusively states the writer's intention, and no evidence is receivable to show that in fact the writer used it in any other sense, or had any other intention. This rule, as I state it, requires perhaps two explanatory observations; the first, that if the language be technical or scientific, and is used in a matter relating to the art or science to which it belongs, its technical or scientific, must be considered its primary, meaning; the second, that by 'sensible with reference to the extrinsic circumstances' is not meant that the extrinsic circumstances make it more or less reasonable or probable is what the writer should have intended; it is enough if those circumstances do not exclude it, that is, deprive the words of all reasonable application according to such primary meaning. This rule thus explained implies that it is not allowable in the case supposed to adduce any evidence, however strong, to prove an unexpressed intention varying from that which the words used import. This may be open no doubt to the remark, that, although we profess to be exploring the intention of the writer, we may be led in many cases to decide contrary to what can scarcely be doubted to have been the intention, rejecting evidence which may be most satisfactory in the particular instance to prove it. The answer is, that interpreters have to deal with the written expression of the writer's intention, and courts of law to carry into effect what he has written, not what it may be surmised, on however plausible grounds, that he intended only to have written." See also *Avery* v. *Chappel*, 6 Conn., 270, 274; *Spencer* v. *Higgins*, 22 id., 521; Wigram on Wills (Extrinsic Evidence), Propositions II., V.; 1 Jarman on Wills, 708; *Kimball* v. *Story*, 108 Mass., 382, 385; *Hinckley* v. *Thatcher*, 139 id., 477.

But apart from the parol evidence, it is claimed that the will itself manifests an intent by the testatrix that the property named in the fourth clause shall go to the children of Dr. Alsop, he having died before her; that otherwise this property becomes intestate estate, and that the court will

make almost any presumption to prevent a partial intestacy. It is true that in construing a will the court always seeks to avoid intestacy, as to any part of the estate belonging to the testator, if it can be done consistently with the rules of law. *Tarrant* v. *Backus*, 63 Conn., 277, 281.

But even if partial intestacy does happen, that result cannot be permitted to nullify a rule of law when the language is free from doubt. *Bill* v. *Payne*, 62 Conn., 140, 142. To sustain the claim made in this respect, would require the word " and " in the phrase above indicated, to be read as meaning " or," the word " heirs " as meaning " children," and that the words " and assigns forever," be disregarded entirely as having no meaning at all in the will. There are, indeed, instances in which this court has read the word " and " as " or," and the converse ; *Phelps* v. *Bates*, 54 Conn., 11 ; and the word " heir " as meaning " children." *Bond's Appeal*, 31 id., 183 ; *Anthony* v. *Anthony*, 55 id., 256. But a change of this kind can only be made when it is clearly required to carry out the intention of the testator as collected from the whole will. Where the word " assigns " is added to the word " heirs," it is almost impossible to read the whole phrase otherwise than as words of limitation, and not as intended to create an estate in any other person. 2 Redfield on Wills, 82 ; *Grafftey* v. *Humpage*, 1 Beavan, 46 ; *Holloway* v. *Clarkson*, 2 Hare, 521, 523.

The effect of the changes claimed in the will would be to prefer the children of Dr. J. W. Alsop over the other relatives of the testatrix in the same degree, and over some who are nearer in blood to her than these. It is very evident that the testatrix intended to prefer her nephew Dr. J. W. Alsop over all her other relatives ; but he being dead, we search the will in vain for an expression indicating an intent to prefer his children, or any one of her remaining relatives, over any of the others in like degree.

Under the residuary clause the legal heirs of the testatrix are to take *per stirpes*, and not *per capita*. This is the rule in this jurisdiction, established by too many decisions to be in any doubt. 1 Swift's Dig., 115, 116 ; *Cook* v. *Catlin*, 25

Conn., 387; *Lyon* v. *Acker*, 33 id., 222; *Raymond* v. *Hill-house*, 45 id., 467; *Heath* v. *Bancroft*, 49 id., 220; *Lock-wood's Appeal*, 55 id., 157; *Geery* v. *Skelding*, 62 id., 499; *Pendleton* v. *Larrabee*, ibid., 393; *Conklin* v. *Davis*, 63 id., 377.

The Superior Court is advised that the devise in the fourth clause of the will lapsed by the death of the said Joseph W. Alsop before the death of the testatrix, and became intestate estate ; and that under the residuary clause of said will the legal heirs of the testatrix take *per stirpes* and not *per capita*.

In this opinion the other judges concurred.