*H. H. McKehan,* for plaintiff in error.
*Metcalf & Cinniger,* for defendant in error.

---

## WILLS.

### [Circuit Court of Auglaize County.]

WILLIAM HALLEY ET AL v. JOSEPH HENGSTLER AND SOPHIA HENGSTLER.

Decided, 1902.

*Wills—Construction of—Effect of Section 5968—Abrogating the Rule in Shelly's Case—Word "Heirs" to be Given its Technical Meaning —Unless a Contrary Intention Appears—Estate of Inheritance— Devise Conveying Estate in Fee.*

1. Section 5968 relating to construction of devises for life limited to heirs, does not establish a hard and fast rule of construction that must resolve all doubtful cases into devises of estates for life with remainder over, but permits courts to give controlling effect to the intention of the testator.

2. While the word "heirs" is flexible and should be so construed as to give effect to the manifest intention of the testator, it retains its strict technical meaning, unless from the context and other aids of construction it clearly appears that the testator used it in some other sense.

3. A devise of land to J and N "to be equally divided between them, and to their heirs at their death" conveys an estate in fee simple.

DAY, J., NORRIS, J., and PARKER, J., (of the sixth circuit, sitting in place of MOONEY, J.); opinion by PARKER, J.

Heard on error.

The whole controversy in this case turns upon the construction to be put on the third clause of the will of Samuel Halley, deceased, under which both parties claim. Other clauses of the will are unimportant here, except as their consideration may aid in the construction of this third clause, which reads as follows:

"Third. I will and bequeath to John Halley and Nathaniel Halley, one quarter section of land owned by me in Allen county, Ohio, to be equally divided between them, and to their heirs at their death."

The will was executed in 1844. The testator died in 1845, seized in fee simple of the land mentioned in this clause. John Halley, mentioned therein, died intestate, in 1896, leaving certain of the plaintiffs his only heirs at law. Nathaniel Halley, mentioned in said item, died intestate, in 1898, leaving certain other of the plaintiffs his only heirs at law.

In 1850, John Halley and Nathaniel Halley, by an exchange of quit-claim deeds divided the lands described in said item, each taking a part thereof in severalty.

The defendants claim ownership of said lands under deeds executed by John Halley and Nathaniel Halley and a regular chain of title by a series of conveyances purporting to carry the title down to them as the last grantees.

Plaintiffs contend that by the will aforesaid John Halley and Nathaniel Halley were devised life estates only in said lands and that remainders in fee simple were devised to their heirs, consequently that estates for the lives only of said John Halley and Nathaniel Halley were carried by said conveyances to the defendants, and that upon the deaths of said John Halley and Nathaniel Halley, the plaintiffs, as their surviving heirs, came into full title in fee simple and right of possession of and to said lands. The defendants, on the other hand, contend that by force of said item three fee simple estates devolved upon and were vested in said John and Nathaniel upon the decease of the testator, and that such estates have been carried on to them by the conveyances aforesaid.

It will be observed that this will was executed and took effect after the passage and taking effect of the Wills Act of March

23, 1840, which took effect October 1, 1840 (38 O. L., 120), Section 5968, Revised Statutes, Section 47 whereof containing the provision that:

· "When lands, tenements or hereditaments are given by will, to any person, for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only, in such first taker, and a remainder in fee simple in his heirs" (Swan's Gen. Stat., 1841, p. 999) which has ever since been a part of the Ohio laws as to wills.

Counsel for plaintiffs base their claim upon the statute, and urge that the language of this clause of the will comes within its provision, and that if this clause does not define precisely estates to John and Nathaniel for their lives, with remainder at their death to their heirs in fee, it does "by words to that effect" define and limit such estates; and they also urge that if this language of the will standing alone is not to be given that effect by force of the statute, the whole will taken together discloses that the purpose of the testator was to thus limit the estates devised. In support of their contention that the testator has manifested this intention, they lay especial stress upon the second clause of the will, whereby certain other lands are devised to certain other sons of the testator, to-wit:

"Second. I give and bequeath to my two sons, William and Samuel Halley, the farm owned by me in Noble township, Morgan county, Ohio, that I now occupy, to be equally divided between two, William and Samuel Halley."

They argue that since in this clause the words "and to their heirs at their deaths," or similar words, or words of like import, are not used, and since in Ohio words of inheritance are not necessary to transmit by will a fee simple estate, and the testator is to be presumed to have known the law on this subject, therefore the addition of the words in the third clause must have been with a design and purpose to devise to John and Nathaniel somewhat different estates from those devised to William and Samuel; and that the addition of the words "and to their heirs at their death" manifests a purpose to cut down the fee simple that would have been sufficiently defined without such addition, and to devise a remainder in fee simple to their heirs.

That though the term "heirs" is usually a term of limitation
and not of purchase, yet as used here in connection with the
words "at their death," it should be deemed a word of purchase
and not of limitation.  That the addition of the words "at their
death" is equivalent to the use of the words "during their lives,"
or "for life," and were intended to denote the quantum of estate
to be devised to John and Nathaniel.

In this brief statement we can not pretend or hope to do
justice to the able arguments of counsel for plaintiffs, so well
epitomized in their brief, but we seek simply to indicate the
points in issue and the line of argument pursued.

It must be remembered that before the adoption of the stat-
ute heretofore quoted, the rule in Shelley's case had been recog-
nized by the courts as a part of the common law in force in
Ohio (*McFeely* v. *Moore,* 5 Ohio, 464), and the purposes and
effect of this statute was to abrogate the rule as to wills (*King*
v. *Beck,* 12 Ohio, 390, 471; *Armstrong* v. *Zane,* 12 Ohio, 287,
290); but the purposes of this law was not and its effect is not
to establish a hard and fast rule of construction that must re-
solve all doubtful cases into devises of estates for life with re-
mainder over, but simply to release us from a rule which carried
us to the other extreme, and leave us at liberty to give controll-
ing effect to the intention of the testator (*Carter* v. *Reddish,*
32 Ohio St., 1-17), and certain other rules respecting the con-
struction of wills, and especially as to the use of the word
"heirs," to which we shall advert, were not affected thereby.

Now while the word "heirs," when used in a will, is flexible,
and should be so construed as to give effect to the manifest in-
tention of the testator as ascertained by a due consideration of
all the provisions of the will (*Weston* v. *Weston,* 38 Ohio St.,
473, 478), yet it is a technical legal term, and in its primary
use and meaning is a word of limitation defining an estate of
inheritance, and not a word of purchase, designating a person
or class upon whom an estate shall devolve by force of the in-
strument in which it is used (Paige on Wills, Section 561; *Jack-
son* v. *Alsop,* 34 Atl. Rep., 1106; 67 Conn., 24), and is to be
given its strict technical meaning when used in a will, unless
from the context or other aids of construction it appears clearly

that the testator used it in some other sense. *Weston* v. *Weston, supra; * Paige on Wills, *supra; Bolton* v. *Bank,* 50 Ohio St., 290; *Collins* v. *Collins,* 40 Ohio St., 353; *King* v. *Beck,* 15 Ohio, 559, 562; *Linton* v. *Laycock,* 33 Ohio St., 128.

*Prima facie,* therefore, the word "heirs" is to be taken as a word of limitation and not of purchase. We think the clause of the will under consideration does not in terms give the lands to John and Nathaniel "for life," nor does it in terms give the lands after their deaths to their heirs in fee. It is only by construction, and by holding that the testator has used "words to that effect," that the will can be given that operation. We are of the opinion that neither the clause in question nor the whole will taken together, makes clear or manifest an intention of the testator to devise life estates only to his sons, with remainders in fee to their heirs.

The added expression "And to their heirs at their death," though in a sense surplusage or tautological, is, nevertheless, appropriate to describe a fee simple in John and Nathaniel. "At their death," we believe should be regarded as surplusage merely. What it expresses is always understood, since a person can possess and enjoy his lands during his lifetime only. It is evident that the will was not so drawn by a person skilled in the use of legal terminology, since he uses the term "bequeath" where he should have written "devise," and other imperfections make such lack of skill or exactness apparent. Therefore, we think that much stress should not be laid upon the use of the words "And to their heirs at their death" in the third clause and not in the second. Having added the words "and their heirs" he may have thought it necessary or at least prudent to add the remainder "at their death," to make it clear that heirs presumptive should have no interest in or control over the lands while John and Nathaniel lived. So, too, such unskilled person may not have been acquainted with the rule made a statutory rule by Section 5970, Revised Statutes, and may have designed to devise a life estate only by the second clause and a fee simple by the third clause. We do not mean to suggest that a court would be warranted in putting such a construction upon the second clause, but we point out here possible constructions to

indicate the insecurity and uncertainty of speculations as to the intention of the testator, and the propriety of holding fast to the rule that the intention of the testator to use the word "heirs" in some other definite sense, must clearly appear before the court will be justified in treating it as other than a word of limitation.

It is true, as said by counsel for plaintiffs, if the will provided that after the death of John and Nathaniel the lands should go to certain named persons, or even if a person or class of persons were designated as "children," "grandchildren," "issue," or the like, it would carry no more than life estates to John and Nathaniel, with remainder to such persons or class, for such designations would not be words of limitation, merely determining the nature or quantum of the estate devised to the first takers, but they would be words of purchase, designating the persons or class who should take title direct from the devisor under the will. As pointed out, there is a wide difference where use is made of the general collective term "heirs," signifying all who might inherit from the first takers, *ad infinitum*.

We hold that by the third clause of this will John and Nathaniel took an estate in fee simple, and that the judgment of the common pleas was right, and, therefore, it is affirmed.