EDWARD E. HOENIG ET AL., EXECUTORS (ESTATE OF WILLIAM M. SULLIVAN) *v.* ARCIE LUBETKIN ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 6, 1950—decided February 20, 1951

*Charles M. Lyman,* with whom were *Edward E. Hoenig* of the New York bar and *John V. Donnelly,* for the appellants (defendants Hoenig et al., Trustees), and with whom were *Irving Sweedler* and, on the brief, *Abraham S. Ullman,* for the appellant (named defendant individually).

*Joseph H. Donnelly,* for the appellants (plaintiffs).

*William H. Timbers,* with whom was *Raymond E. Hackett,* for the appellees (defendants Johnson and Bagby).

*Philo C. Calhoun,* for the appellee (defendant Guaranty Trust Company of New York).

*Raymond J. Cannon* appeared for William L. Hadden, attorney general.

O'SULLIVAN, J. The plaintiffs, Edward E. Hoenig and Arcie Lubetkin, in their capacity as executors, brought this action to obtain a construction of the will of their testator, William Matheus Sullivan, late of Ridgefield. Named as defendants, among others, were Lubetkin individually and as trustee and Hoenig as trustee. From the judgment rendered by the court in answering three of the five questions upon which the plaintiffs sought advice, the defendants just mentioned, whom we shall hereinafter refer to as the defendants, have appealed. They claim to be aggrieved mainly by the answer given to question B.

The testator was a lawyer, and the will is the product of his own draftsmanship. Among its provisions are the following: The plaintiffs are appointed executors and trustees of the will, and upon the failure of either to act or upon his death the Guaranty Trust Company of New York is appointed successor executor and trustee. In the twentieth paragraph, a gift of the residue of the estate is made in trust to the executors and trustees for the life use of Lubetkin and, upon his death, for the life use of Hoenig. In the twenty-first paragraph, the testator directs that the trust shall terminate upon the death of the life tenants and that the fund shall be turned over to his executors and trustees to be paid by them to a corporation to be formed under the name "William Matheus Sullivan Musical Foundation." The testator outlined the use to which the fund is then to be applied. Speaking

broadly, it is to aid worthy students of music and to present concerts for the public. The testator appoints Edward Johnson, Edward Ziegler (since deceased) and George Bagby, in conjunction with the executors and trustees under the will, to serve as trustees of the charity for at least the first year of its existence.

The plaintiffs' question B asked: "Should the Trustees now proceed to establish the William Matheus Sullivan Musical Foundation?" The court, answering it in the negative, construed the will to mean that the musical foundation is not to be incorporated until the termination of the trust created for the benefit of Lubetkin and Hoenig. The defendants maintain that the corporation should be formed immediately. Their position is this: The twenty-first paragraph is ambiguous; its language purports to give the trust fund to the proposed foundation after the deaths of Lubetkin and Hoenig, then appears to direct those individuals in their capacities as executors and trustees to incorporate the foundation, and finally seems to designate them to serve, with others, as the original trustees of the corporation thus formed. This ambiguity, it is urged, should be so resolved as to conform with the testator's primary intention to have the foundation organized now by men, such as Lubetkin and Hoenig, who know what he wanted.

In seeking the intention of the testator, resort must first be had to the will itself. *Morehouse* v. *Bridgeport-City Trust Co.*, 137 Conn. 209, 217, 75 A. 2d 493. Only in the event that the will is of uncertain meaning may a court look to extrinsic evidence as an aid in removing the doubt and in finding the testator's true intention from the language through which he expressed himself. *Thompson* v. *Betts*, 74 Conn. 576, 579, 51 A. 564.

It is perhaps a gross understatement to say that the

twenty-first paragraph, the material parts of which are found in the footnote,[1] lacks the clarity of a well-drafted instrument. The ambiguity centers, however, more on the personnel who are directed to form the corporation than on the time when they are to act. The latter is fixed with unmistakable precision. It is "upon the termination of the Trust created . . . for the benefit of Arcie Lubetkin and Edward E. Hoenig, or

---

[1] "Twenty-first:—During my lifetime, it has been my life work to advance the cause of music and to help, aid and assist talented young artists worthy of developing and improving their talents in making a musical career, I therefore direct that upon the death of said Arcie Lubetkin and Edward E. Hoenig, this Trust shall cease and terminate and the remaining principal of said Trust . . . I give, devise and bequeath unto my Executors and Trustees hereinbefore named to be paid and turned over by them to a corporation to be formed as herein set forth and specified and to be known as the 'William Matheus Sullivan Musical Foundation,' and to be used by said corporation for the following uses and purposes:

"(a) I do hereby direct and instruct my said Executors and Trustees, or such of them as shall qualify and undertake the execution of this my Will, and the survivor of them and their successors, upon the termination of the Trust created here in Paragraph 'Twenty-First' herein for the benefit of Arcie Lubetkin and Edward E. Hoenig, or as soon therafter as may be practicable, to incorporate or cause to be incorporated . . . a corporation to be known as the 'William Matheus Sullivan Musical Foundation'. . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In thus stating the objects of and the powers to be given to said corporation, I do not intend to limit my Executors and Trustees hereinbefore named, or such of them as shall qualify and undertake the execution of this my Will, the survivor of them and their successors, or the incorporators of said corporation, to the language thus employed by me . . . [but the charter] may contain such other enumeration of powers as by my said Executors and Trustees hereinbefore named, or such of them as shall qualify and undertake the execution of this my Will, the survivor of them and their successors, or the incorporators of said corporation may be deemed necessary. . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I hereby nominate and appoint my dear friends, Edward Johnson and Edward Ziegler of the Metropolitan Opera Association, and George Bagby, in conjunction with my Executors and Trustees as

as soon thereafter as may be practicable. . . ." Extrinsic evidence could in no manner make this language clearer. In and of itself, it needs no clarification.

But, it is urged, this language, though apparently free from ambiguity, becomes obscure in the light of the testator's instructions, claimed to be directed to Lubetkin or Hoenig or both, to form the foundation. If the will includes such instructions, its provisions as to the time for incorporation and the personnel to effectuate it are hopelessly inconsistent. But, as we shall point out, such is not the case. The apparent inconsistencies are reconcilable.

Nowhere does the testator refer specifically to Lubetkin and Hoenig when he speaks of the foundation. It is true that they are appointed "Executors and Trustees" and that the "Executors and Trustees" are directed to establish the foundation. It by no means follows, however, that in the indiscriminate and unhappy use he made of the words "Executors and Trustees" he constantly referred to Lubetkin and Hoenig. In fact, there are at least seven places in the will where he uses those words in a manner which necessarily refers to the successors of these two and not to them. His primary purpose, abundantly evident, was to convert the residue of his estate into a trust for the benefit of Lubetkin as long as he lived, and, after his death,

appointed herein, as Trustees of said Corporation for at least the first year of its existence. . . .

"If for any reason the said Corporation shall not be organized . . . then and only in that event, upon the termination of the trust created in this Paragraph 'Twenty-First' for the benefit of Arcie Lubetkin and Edward E. Hoenig, I direct that the said fund shall be by my said Executors and Trustees in conjunction with my friends, Edward Johnson, Edward Ziegler and George Bagby, as such Trustees, applied and paid for any charitable purpose . . . which shall be selected and determined by my said Executors and Trustees in conjunction with the said Edward Johnson, Edward Ziegler and George Bagby, as such Trustees. . . ."

for Hoenig, should he then be alive, and, upon the death of the survivor, to use the fund for the laudable charity which he contemplated. In paragraph two of his will, he appoints Lubetkin and Hoenig as executors and trustees, but, at the same time, he anticipates their deaths as well as the possibility that one or the other, or both, may refuse or be unable to qualify in a representative capacity. Accordingly, he appoints the Guaranty Trust Company as the successor of either or both, thereby disclosing the true meaning with which he speaks whenever he mentions his "Executors and Trustees." He employs the words in a generic sense, intending that they shall refer to the office rather than to specific individuals who might at any given time be occupying it.

This construction finds support in several considertions, of which we mention a few. It conforms with common sense. In the very sentence in which the death of the survivor of Lubetkin and Hoenig is used to fix the time for incorporating the foundation, the testator directs his "Executors and Trustees . . . and the survivor of them and their successors" to proceed to establish the charity. Obviously, he could not have intended dead men to act. The vital words are "their successors." Then again, it is significant that the testator, in appointing trustees of the foundation, nominated Johnson, Ziegler and Bagby but failed to mention Lubetkin and Hoenig by name. Furthermore, if we accept the interpretation which the defendants propose, we would be confronted by repugnant provisions, one, that the foundation is to be established upon the deaths of Lubetkin and Hoenig, the other, that these named individuals are to proceed with its incorporation. If the defendants' construction were correct, it would not serve to their advantage. As pointed out before, the ambiguity cannot be found in the lan-

guage which the testator used in stating the time. It lies in his use of the words "Executors and Trustees." "[A]n unambiguous provision will not be controlled or modified by a doubtful or ambiguous provision found elsewhere." *In re Thomas' Estate,* 17 Wash. 2d 674, 678, 136 P. 2d 1017; see *Fanning* v. *Main,* 77 Conn. 94, 99, 58 A. 472; 2 Page, Wills (Lifetime Ed.) p. 872. The construction which the court adopted, of which we approve, avoids any repugnancy and gives effect to both provisions. "Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect." *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175; *Citizens & Mfrs. National Bank* v. *Guilbert,* 121 Conn. 520, 526, 186 A. 564.

The defendants point to the provision in the will that, if the corporation is not organized, the residuary estate shall go over to other charities, and they argue that this indicates an intent that the corporation must be in existence to take the trust fund upon the death of the survivor of the life tenants. The weakness of this argument is that it ignores the fact that it is proper to make a bequest to trustees to be paid over to a charitable corporation which is to be organized after the bequest becomes operative. *Beardsley's Appeal,* 77 Conn. 705, 708, 60 A. 664; *Coit* v. *Comstock,* 51 Conn. 352, 383. The obvious intent of the testator was that the fund should go to other charities only in the event that the corporation was not organized within a reasonable time after the deaths of Lubetkin and Hoenig. *Coit* v. *Comstock,* supra.

The defendants concede that if their interpretation is to be accepted the will must be rewritten. They seek the impossible. The power of a court is limited to an interpretation of the language used by the testator. *Estate of Kelleher,* 202 Cal. 124, 127, 259 P.

437; *Lyter* v. *Vestal*, 355 Mo. 457, 462, 196 S. W. 2d 769. We may construe a will but we are powerless to construct one. *Fairfield* v. *Lawson*, 50 Conn. 501, 508.

We conclude that on analysis of the will itself the apparent ambiguity ceases to be a real one. In view of this, it is unnecessary to resort to extrinsic evidence. *Mahoney* v. *Mahoney*, 98 Conn. 525, 537, 120 A. 342; *Jackson* v. *Alsop*, 67 Conn. 249, 252, 34 A. 1106; *Miles* v. *Strong*, 62 Conn. 95, 102, 25 A. 459. For this reason, we omit a recital of the facts. The assignments of error addressed to the finding and to rulings on evidence can have no effect on the outcome and are not discussed. The trial court correctly answered question B. Other questions were not argued orally or in brief and we do not consider them. *State* v. *Jones*, 124 Conn. 664, 665, 2 A. 2d 374; Conn. App. Proc. § 165.

The plaintiffs have appealed from a supplemental judgment rendered by the court allowing, as counsel fees, $7500 for the defendants Johnson and Bagby, and $3750 for the defendant Guaranty Trust Company. The plaintiffs' claim is that the amounts are excessive.

Section 7997 of the General Statutes provides that "In any action brought to a court of equitable jurisdiction for the construction of a will, by any person acting in a fiduciary capacity thereunder, there shall be allowed to each of the parties to such proceeding such reasonable sum for expenses and counsel fees as such court, in its discretion, shall deem equitable . . . ." No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations. *Slade* v. *Harris*, 105 Conn. 436, 444, 135 A. 570; *Stoddard* v. *Sagal*, 86 Conn. 346, 348, 85 A. 519; *Phelps* v. *Hunt*, 40 Conn. 97, 100. The use of the word "equitable" appears in the statute for the first time in 1930. General Statutes, Rev. 1930, § 5683. It was a substitution for the word "proper."

General Statutes, Rev. 1918, § 5813. Although this change appears to suggest an additional element for a court to consider in fixing the fee, it does not, in reality, do so. A fee that is reasonable or proper must necessarily be one which is fair and equitable. *Stevenson* v. *Moeller*, 112 Conn. 491, 496, 152 A. 889.

A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. *Hayward* v. *Plant*, 98 Conn. 374, 382, 119 A. 341; *Golstein* v. *Handley*, 390 Ill. 118, 125, 60 N. E. 2d 851. The trier is always in a more advantageous position to evaluate the services of counsel than are we. The gross inventory of the estate is $1,300,000. The court was advised in detail of the time consumed in and of the efforts devoted to the preparation of the case, and it was, of course, aware of the activities of counsel during the course of actual trial. We deem it ample to say that a careful consideration of the facts reveals no abuse of discretion by the court. See note, 9 A. L. R. 2d 1156, § 6.

There is no error on either appeal.

In this opinion the other judges concurred.