ISABELLA THROOP and MARTHA THROOP *against* WILLIAMS.

*A.* devised real estate to *B.,* his wife, during her natural life, and after her death, to his niece *C.,* to have the improvement thereof, to her, and her heirs, during her natural life; and declared, that after the death of *C., D.,* her son, should be the sole heir of such estate. *D.* survived the testator about a month. At the death of *D.,* he had a sister *E.;* and four years after his death, *F.* and *G.,* two other sisters, were born. Held, that *D.* took a remainder in fee, vested in interest, and to take effect and be enjoyed after the preceding estates devised, which were both estates for life, should be determined; and that on the death of *D.,* his title devolved on *E.;* but after the birth of *F.* and *G.;* they took as joint heirs with her under the devise.

This was an action of ejectment for several tracts of land, formerly the property of *Joseph Harris,* deceased.

The cause was tried at *New-London, October* term, 1821, before *Peters,* J. The jury, under the direction of the judge, gave a verdict for the defendant; and the plaintiffs moved for a new trial, for a misdirection.

The case was argued, before this Court, at *Norwich, July* term, 1822, by *Gurley* and *E. Learned,* in support of the mo-

tion, and by *Cleaveland* and *Isham*, contra; and was continu- <span style="float:right">*New-London,*<br>July,<br>1823.</span>
ed to this term *to advise.*

Throop
*v.*
Williams.

HOSMER, Ch. J. *Joseph Harris*, in the month of *August*, 1798, died, seised in fee of the demanded premises, leaving a last will and testament. After having made a number of bequests, he devised the residue of his property, in the following words: "I give the whole of the remainder of my real estate to my loving wife *Sybil*, during her natural life; and after her death, my will is, that my niece *Martha Throop*, daughter of my sister *Temperance*, deceased, to have the improvement of my real estate before-mentioned to her and her heirs, during her natural life. Also, my will is, that after the death of my niece *Martha Throop* aforesaid, *Joseph Harris Throop*, the son of *John* and *Martha Throop*, to be the sole heir of all my real estate." *Joseph Harris Throop*, at the decease of the testator, was alive, and survived him about a month. *Sybil Harris*, the wife of the testator, entered on the premises devised, and continued in possession until her death, when *Martha Throop* entered and demised the property for sixty years, and likewise for her natural life, and has since deceased. At the death of *Joseph Harris Throop*, he had one sister, named *Clarissa*, who is now living; and about four years after his death, the plaintiffs, who are the sisters of *Joseph Harris Throop*, were born. The judge charged the jury, that *Joseph Harris Throop*, under the above mentioned will, took an estate of inheritance in remainder, vested in interest; and that upon his death, it descended to his sister *Clarissa Throop*, being his only heir then living; and that the plaintiffs having been born more than four years after the death of their said brother, had no interest in the premises. The jury returned a verdict for the defendant; and to review the legal propriety of the above-mentioned charge to the jury, is the object of the present motion.

The case presents two questions: first, what estate did *Joseph Harris Throop* take in the premises; secondly, were the plaintiffs, having been born after his death, joint heirs with his sister *Clarissa.*

1. *Joseph Harris Throop*, under the devise, took a remainder in fee, vested in interest, and to take effect and be enjoyed after the preceding estates devised should be determined. The estate was invariably fixed, to remain to a determinate person, after the particular estates were spent, and was, in no sense, contingent. A contingent or executory remainder, is, where the

estate is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event, so that the particular estate may chance to be determined, and the remainder never take effect. *Boraston's* case, 3 *Co. Rep.* 20.

To establish the correctness of the position assumed, a brief review of the will of the testator may not be unnecessary. The estate devised to *Sybil,* the wife of the devisor, was to be enjoyed during her natural life, and presents no question for discussion. After her death, the property vested in *Martha Throop,* "to have the improvement of the real estate before-mentioned, to her and her heirs, during her natural life." It was taken for granted, in the argument of the case, that *Martha* took an estate for life only, and, in my opinion, with entire correctness ; although upon the principle of some cases decided in *Westminster-Hall,* it might be contended, that she was vested with a fee simple, by virtue of the word "*heirs.*" The intention of the testator is indisputably clear, that she should enjoy an estate for life only. The word, *heirs, proprio vigore,* in devises, is a word of limitation ; and under the rule in *Shelley's* case, 1 *Co. Rep.* 93. which is now abrogated in this state, by statute, there has been given to it, in some cases, such a controuling force, as to cause an annihilation of other terms in the same will, by which the intention of the testator was unquestionably manifested. I do not mean to enter into the controversy relative to the use of the word *heirs ;* but I shall content myself with observing, that I entirely accord with those decisions, which effectuate the manifest intention of the testator, apparent from the whole will, in defiance of this term. *Reeve's Dom. Rel.* 455. & seq.

The intention of the testator, in his devise to *Martha Throop,* cannot be mistaken. He gives her "*the improvement*" of the estate devised, to which is superadded the expression "*during her natural life ;*" and *after her death,* he declares his will to be, that *Joseph Harris Throop* shall be "*his sole heir,*" and have "*all his estate.*" The expression, that the improvement shall be to her heirs during her life, has no definite legal signification. *Nemo est hæres viventis.* Either the testator, during the life of *Martha,* intended that her heirs should be invested jointly with her in the estate devised—using the term as a word of purchase—or the word heirs has no conceivable meaning.— On the whole, I entertain no doubt, that *Martha* took only an estate for life ; and that *Joseph Harris Throop* was invested

with a remainder in fee-simple, to be possessed and enjoyed after her death.

New-London,
July,
1823.

Throop
v.
Williams

2. On the decease of *Joseph Harris Throop*, his title devolved on *Clarissa*, his only sister then surviving ; but after the birth of the plaintiffs, they took, as joint heirs with her, under the devise. It is said in the *Doctor and Student, dial.* 1. *c.* 7. : " If the son purchaseth lands in fee, and dieth without heirs of his body, the lands shall descend to his uncle, and shall not ascend to his father : but if the father have a son, though it be many years after the death of the elder brother, yet that son shall put out his uncle, and shall enjoy the lands as heir to the elder brother forever." Precisely to the same effect is the doctrine in *Co. Litt.* 11. *b.* ; and in 3 *Cruise's Dig. tit.* 29. *c.* 3. *s.* 12. it is laid down, that " in consequence of the principle that the freehold shall never, if possible, be in abeyance, lands always descend to the person who is heir at the time of the death of the ancestor ; but such descent may be defeated, by the subsequent birth of a *nearer* heir." In the 16th section of the same chapter, after having cited *Co. Litt.* 11. *b.*, the author says : " So where a son purchased, and died without issue, the uncle entered as his heir, and two years afterwards the father had issue another son ; it was held, that such other son might enter on his uncle."— For this he cites *Bro. Abr. tit.* Descent, 58. Sir *William Blackstone*, (2 *Comm.* 208.) having defined who are heirs apparent, and who heirs presumptive, and remarked, that the hopes of the latter may be cut off, by the birth of a son, then observes : " Even if the estate hath descended, by the death of the owner, to such brother, or nephew, or daughter ; in the former cases, the estate shall be devested and taken away, by the birth of a posthumous child ; and in the latter, it shall also be totally devested, by the birth of a posthumous son."

The defeasance of an estate already vested, by a future contingency, is not a doctrine confined to the law of descents. A vested remainder in lands may open to let in after born devisees. *Dingley* & al. v. *Dingley*, 5 *Mass. Rep.* 537. So, if a man devises to *A.* and his heirs, but if he dies before the age of twenty-one, then to *B.* and his heirs ; the remainder, though void in a deed, is good by way of executory devise. *Taylor* d. *Smith* v. *Biddall*, 2 *Mod.* 289. Now, in the case put, *A.* may be well vested with the fee-simple, and of the actual enjoyment of the estate ; but if he die before twenty-one, his heirs are defeated of their expectations, and by law acting on the devise, the property is transferred to *B.*

*New-London,*
July,
1823.

Throop
*v.*
Williams.

The plaintiffs, then, are joint owners of the demanded premises with *Clarissa ;* and thus the jury should have been instructed.

The other Judges were of the same opinion.

New trial to be granted.