In the Matter of the Real Estate of MARY ANN WARD, deceased.

*New Castle, Jan.* 14, 1914.

The surplus proceeds of realty of a decedent sold to pay his debts is to be considered as realty in determining the place of administration.

An administrator filed a petition for direction as to the disposition of the surplus proceeds of a sale of decedent's realty to pay her debts, showing that the surplus was to go in equal parts to each of her seven children; that one of them had married after decedent's death, and had died intestate before the filing of the petition for a sale, leaving a surviving husband residing in Pennsylvania, entitled to curtesy in one-half of her estate after payment of her debts. *Held*, that administration must be taken out in this State, where resident and non-resident creditors might probate their claims, and that any amount remaining above such claims would be distributed under the intestate real estate laws of the State, one-half of the deceased daughter's share to go to her heirs, and one-half to be deposited in the State, the income and interest therefrom to be paid the tenant by the curtesy, and, upon his death, to be distributed to her heirs.

PETITION FOR DIRECTIONS TO ADMINISTRATOR. George B. Ward, Administrator of Mary Ann Ward, deceased, sold the real estate of the deceased under order of the Orphans' Court for the payment of her debts.   Thereafter a subsequent petition was presented praying for directions as to the payment or disposal of the surplus in his hands after payment of the debts.   The facts appear in the opinion of the court.

RICE, J., sitting.

*Lilburne Chandler*, for the petitioner.
*Harry P. Joslyn* and with him *Charles B. Joy*, of Philadelphia, Pa., for the Administrator of Julia B. Wallace.

RICE, J.   The petition of George B. Ward, administrator of Mary Ann Ward, deceased, sets forth that Mary Ann Ward, died intestate, seised as of fee of two lots of land, situate in the City of Wilmington, New Castle County; that her personal property was insufficient to pay her debts, and this court made an order for the sale of the land to pay her debts, which sale was made and return thereof confirmed; that thereafter the petitioner passed his final account before the Register of Wills in and for this County, which final account shows a surplus in the hands of the administrator, out of the proceeds of said sale of real estate, of seven hundred and eighty-four dollars and eighty-eight cents; that the deceased left to survive

her seven children as her heirs at law, each being entitled to a one-seventh part of her real estate at the time of the death of the intestate; that Julia B. Wallace, one of the heirs at law, intermarried with William A. Wallace and since the death of the intestate and before the filing of the petition for the sale of said real estate, died intestate, leaving to survive her William A. Wallace, her husband, without having had issue born alive.

This petition was filed under *Section* 11, *Chapter* 90, *of the Revised Code of* 1893, *page* 691, which provides:

"The Orphans' Court, upon the petition of an executor, or administrator, shall give directions for the payment, or disposal, of said surplus."

Counsel for the petitioner claims that as the death of Julia B. Wallace occurred at a time subsequent to the death of her mother, and prior to the time of the sale of the real estate, those claiming under her have no interest in the surplus fund, and that it should be equally divided between the six remaining children as the heirs at law of Mary Ann Ward, deceased.

Counsel appeared for William A. Wallace, the husband of Julia B. Wallace, deceased, who had made application for letters of administration upon the estate of his wife in the courts of Philadelphia, State of Pennsylvania, in which city Wallace and his wife resided at the time of her death. It was urged on behalf of the husband that: One equal seventh part of the surplus should be used to pay her debts in Delaware and the balance, if any, be turned over to the Philadelphia administrator when appointed, and by said administrator applied to the payment of her debts in Pennsylvania.

A provision for the disposition of the surplus of the proceeds of a sale of this kind is contained in the following *Section of Chapter* 90, *Revised Code* 1893, *page* 691:

"Section 10.   If there be any surplus of the sale, over paying all the debts, it shall belong to the person to whom the premises sold belonged at the time of the sale, who shall have the same proportion, quantity, and manner of interest in the surplus, as he had in the premises sold; and an executor, or administrator, shall not detain the said surplus or any part of it, on account of any mortgage, obligation, or recognizance entered

into, or executed, by the deceased with other condition than for the absolute payment of money, or interest, and which was a lien on the premises sold."

The petitioner's claim is based on the supposition that the interest of Julia B. Wallace in the real estate of her mother terminated upon her death, and that at the time of sale her interest had ceased to exist. But this is contrary to the laws of this State, for immediately upon the death of the intestate her real estate at once descended, subject to the rights of her creditors, to her heirs at law, of whom Julia B. Wallace was one. And the interest of Julia B. Wallace was of such a nature that it would not cease at her death, but would descend to her heirs at law, under the rules of descent, subject to the statutory right of curtesy of her husband. Therefore, at her death her interest in the real estate of her mother descended to her heirs at law, subject to the husband's curtesy, and to them it belonged at the time of the sale.

Counsel for William A. Wallace admit that the proceeds of the sale are to be considered as real estate and subject to the intestate real estate laws of this State, but contend that as the proceeds are tangible and movable, and application for letters of administration had been made in Pennsylvania, the share of Julia B. Wallace should be devoted to the payment of her debts in Delaware, if any, the balance turned over to her Pennsylvania administrator for the payment of her debts in that State, any remaining portion to be then distributed according to our intestate laws.

Counsel made their argument as representing William A. Wallace, administrator of Julia B. Wallace, deceased, and not as representing the personal interest of William A. Wallace in his wife's estate. As representing William A. Wallace, administrator, I cannot see that they have any standing at all in this court, in the petition now being considered, for not only have they failed to show letters of administration granted in Pennsylvania, but they also fail to show that letters of administration have been granted in this County on the estate of Julia B. Wallace, deceased. If at the time of the death of

Julia B. Wallace, partition of the estate had been made, and she with the other heirs held their shares in severalty, I believe counsel would not contend that he had the lawful right to come into this court with Pennsylvania letters only, and ask for an order for the sale of the land to pay debts of the intestate.

Yet this is in effect the present case, for there can be no difference, in the case under consideration, between the proceeds of a sale, considered as real estate, and real estate itself. That the proceeds are tangible and movable are not in themselves sufficient to distinguish them from property in the form of real estate, when the question of place of administration is under consideration.

Courts will not in all cases permit funds to be taken outside of one state and into another jurisdiction for the purposes of administration, for under certain circumstances it is necessary to protect the interests of citizens of the state wherein the funds are located, by having the funds administered at home.

In the case under consideration if letters of administration were taken out in Pennsylvania and Delaware, and the fund in question turned over to the Delaware administrator, for the payment of debts here, and any balance remaining thereafter turned over to the Pennsylvania administrator, our courts would, upon its removal there, no longer have any control over the fund. It would in Pennsylvania be considered as personal property and so administered. This would be an injustice to the Delaware heirs of Julia B. Wallace, and they might then be well of the opinion that their rights had not been properly protected by this court.

But, on the other hand, if there are outside creditors of the estate of Julia B. Wallace, their rights would be fully protected, as well as the rights of creditors and heirs at law within this State, if letters of administration were taken out in Delaware.

In such event all creditors alike could probate their claims under *Section* 25, *Chapter* 89, *Revised Code* 1893, *page* 676, which provides for the order of payment of demands against a deceased person. And if after the payment of debts, for which

the estate of Julia B Wallace is liable, there remained a portion of the fund, such balance would be distributed under the provisions of the intestate real estate laws of this State.

At the death of Mary Ann Ward, who died intestate, she left as her only heirs at law, seven children who were entitled to her real estate as coparceners. Upon the death of Julia B. Wallace, one of the heirs, her interest descended to her heirs at law, subject to her husband's statutory right of curtesy in one-half of her share, after the payment of her just debts. The fact that she had creditors outside of the State of Delaware would not make her share liable for the payment of those debts, unless they were properly probated and filed with the administrator here. That this may be done, letters of administration must be taken out in this County, if not by persons related to her, then by a representative of those holding claims against her estate. And until this is done, this court directs that the administrator of the estate of Mary Ann Ward retain that part of the surplus fund to which Julia B. Wallace would have been entitled if living. When letters of administration on the estate of Julia B. Wallace are taken out in this County he (George B. Ward, administrator of Mary Ann Ward, deceased) is directed to turn over to such administrator an amount sufficient, if the fund is large enough, to pay the costs of administration and such probated claims as may be allowed by the Register of Wills of this County. And upon the passing of a final account by the administrator of Julia B. Wallace, if there remains a balance of such share in the hands of George B. Ward, the administrator of Mary Ann Ward, that he distribute one equal half part of such balance equally among the heirs at law of Julia B. Wallace, and the other equal one-half part he deposit in one of the savings fund societies located in this city, the income and interest, derived therefrom, to be paid to William A. Wallace, the husband of Julia B. Wallace, deceased, during his lifetime, and upon the death of William A. Wallace, the surviving husband, such part to be distributed to the heirs at law of the said Julia B. Wallace, deceased, according to the intestate real estate laws of this State.