Mahoney *v.* Mahoney.

---

CATHERINE A. MAHONEY ET AL. *vs.* MICHAEL F. MAHONEY, EXECUTOR, ET AL.

First Judicial District, Hartford, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The right of survivorship does not exist as an incident of an estate in joint tenancy in this State, but may be created by will if the testator clearly indicates his intention to that effect.

A testator gave the residue of his estate to his wife for life, and at her death to be equally divided between his two daughters, their heirs and assigns forever, but if either should die before his decease or

that of his wife, "leaving no child or children them surviving," then the share which they or either of them would have received should go to the daughter then living, and in case of the death of both daughters before the death of the wife, leaving no child or children at the death of the wife, the estate should go to the testator's sons. The two daughters survived the testator, but one died before the life tenant leaving a child still living. *Held:*—

1. That the will, far from showing a joint estate with right of survivorship between the two daughters, disclosed the testator's intention to the contrary.

2. That each daughter at the testator's death took a vested interest subject to be divested by either of two conditions—the death of the daughter in question leaving no child, or the death of both daughters leaving no child; and that since neither condition had operated, the estate at the life tenant's death was properly distributed one half to the living daughter and one half to the estate of the deceased daughter.

*It seems* that had the provision for the gift over concerned the death of the daughter without issue living at her death, there would have been created an estate tail by implication, requiring distribution of one half of the fund to the deceased daughter's child instead of to the deceased daughter's estate; but this principle could not apply to the present case, where the provision was the death of the daughter without issue living at the death of the life tenant.

The surviving daughter claimed that there was a latent ambiguity or equivocation in the will and sought to offer evidence to explain it, to the effect that the testator was informed by both of his daughters, and believed, that neither of them intended to marry, and hence that he intended to provide for the daughters, and was not concerned with providing for any children they might have. *Held* that the testator's intention was clearly disclosed in the will, and that the evidence which was offered to vary that intention was not to be considered.

Argued January 10th—decided March 1st, 1923.

APPEAL by the plaintiffs from an order and decree of the Court of Probate for the district of Hartford ascertaining the distributees of the testate estate of Patrick Mahoney and appointing distributors, taken to and tried by the Superior Court in Hartford County, *Kellogg, J.;* facts found and judgment rendered confirming the decree of the Court of Probate, from which the plaintiffs appealed. *No error.*

The testator, Patrick Mahoney, died in 1906, leaving a will which was duly admitted to probate. He left a widow, five sons, two daughters and nine grandchildren, for all of whom he had affection. His widow died in October, 1920, having enjoyed the use and income of the residue of the estate referred to in paragraph eight of said will. Catherine A. Mahoney, one of the daughters of the deceased, survived the testator and the life tenant, and is still living. The other daughter, Elizabeth P. Mahoney, married John S. Fitzsimmons in 1909, and died on or about June 23d, 1913, having survived the testator but died prior to the death of the life tenant in 1920, and left surviving her a daughter, and one of the grandchildren of the testator, Elizabeth Katherine Fitzsimmons, who was born on or about November 6th, 1910, and who has survived the life tenant and is still living.

The Court of Probate for the district of Hartford duly made an order for distribution of the residue of said estate, on or about the 20th day of July, 1921, distributing said residue one half to Catherine A. Mahoney, one of the appellants, and the other half of the estate to the estate of Elizabeth P. Fitzsimmons; and on said date appointed distributors thereof. From said order of distribution appellants appealed to the Superior Court, which sustained the action of the Court of Probate.

The will of the testator, after providing for the payment of debts and giving various legacies to four of his sons and by way of legacy cancelling the indebtedness of a fifth son, disposes of the residue of his estate as follows: "Eighth: I give devise and bequeath to my wife, Eliza, the use of the income during her life time, in lieu of her dower right, of all the rest, residue and remainder of my estate both real and personal of whatever name and nature and wherever situated

and at her death the entire residuum of my estate is to be equally divided between my two daughters, Katherine A. and Elizabeth P., one-half to each to be to them, their heirs and assigns forever, but if either of my said daughters shall die before my own decease or that of my said wife leaving no child or children them surviving then I direct that the share which they or either of them would have received had they survived shall become a part of the residuum of my estate, and at the death of my said wife the entire residuum of my estate shall go to the daughter then living, but in case of the death of both of my said daughters before the death of my said wife leaving no child or children at the death of my said wife then I direct that the residuum shall be equally divided between my five sons, viz.: Michael F., William E., Henry, Joseph T. and George share and share alike to be to them their heirs and assigns forever, and in case any of my said sons shall die leaving no child or children then I direct that the share which said son would have received had he survived shall be equally divided between my said sons then living their heirs and assigns fo ever."

Hearing was had in the Superior Court upon a motion for judgment by appellees upon the reasons of appeal filed by the appellants and the reply thereto, and at the same time upon motion by appellants for leave to file additional reasons of appeal. The latter motion was granted, and the appeal was afterward heard by the court.

The amendment of the reasons of appeal above referred to was added as subparagraphs to the sixth reason of appeal as originally filed, and is in effect as follows: (a) that at the time of the execution of the will testator had ten grandchildren, children of his five sons, for whom no provision was made in the will; (b) that the plan and theory of the will, frequently

expressed by the testator, was solely to provide for his two daughters during their lives; (c) that testator's daughter Elizabeth P. Fitzsimmons was sickly and an invalid and unable to perform physical labor, which condition was known to testator and so frequently declared by him; (d) that the conviction that his said daughter would never marry on account of her invalidism had been frequently expressed by the testator, and with that in mind he provided for her in the manner expressed in his will; (e) that said daughter, prior to the execution of said will, frequently told her father that she would never marry; (f) that the other daughter, Catherine, frequently expressed the same intent not to marry, and in fact never did marry.

Upon the trial in the Superior Court, in support of the reasons of appeal above summarized, appellants offered the testimony of said Catherine A. Mahoney, and propounded questions regarding the relationship of members of the family of the deceased with him and each other, and his feelings toward them; also as to the care given by her to her father during an illness, and his declarations to the witness at that time; also whether he made any declarations concerning his will, and what they were; also as to the condition of health of her sister Elizabeth, and of statements made by the latter as regards her intention never to marry; also whether the testator had received intimations that neither of his daughters would ever marry; also whether the testator, in the presence of his wife and two daughters, gave any ideas as to the provisions of his will.

All of these questions, upon objection, were excluded, and exceptions taken by the appellants. It further appears in the finding that "for the purpose of the record the appellants offered the appellant William E. Mahoney for the same line o testimony, with the same objections, rulings and exceptions."

Appellants' claims of law as made in the Superior Court are as follows:—

"1. That there is a latent ambiguity and equivocation and doubtful meaning in paragraph eight of said will.

"2. That there was no limitation over to any heirs or issue in said will, which would be necessary in order that issue should take.

"3. That the interest devised of the residue, as set forth in paragraph eight of said will, was a contingent interest and did not vest until after the death of the life tenant.

"4. That said paragraph eight of said will provided for a survivorship of the 'entire residuum' of said estate in the appellant, Catherine A. Mahoney.

"5. That as a matter of law said paragraph eight of will not only indicated, but directed, a survivorship of the entire residuum of said estate in said Catherine A. Mahoney.

"6. That any implication arising from the words 'leaving no child or children them surviving,' is overcome by the plain indication and direction for survivorship as repeatedly provided for in said paragraph eight of said will.

"7. That if the appellants are in error in their contention of survivorship, and there being no specific devise in said will to any issue of the daughters, or limitation over, and the devise to Elizabeth P. Fitzsimmons having failed because she did not survive the life tenant, and the construction of paragraph eight of said will, therefore, being so uncertain and doubtful, that the one half of the residuum of said estate so attempted to be devised to the daughter, Elizabeth P. Fitzsimmons, failed and is now intestate estate, in which any issue of said daughter, Elizabeth P. Fitzsimmons, participates."

All of these claims of law were overruled by the court, and this the appellants assign as error, and also the exclusion of the testimony offered in support of the amendment to the reasons of appeal, as above set forth.

*William H. MacDonald,* for the appellants (plaintiffs).

*Charles Welles Gross,* for appellees (defendants).

KEELER, J.   The claim of appellants that while in this State there is practically no difference between joint tenancies and tenancies in common, in that the right of survivorship by common law existing in the case of joint tenancies is not recognized, still the rights of survivorship may be created by will, is undoubtedly true.   It is only necessary for a testator to indicate such an intention, and the intention "if discoverable, will, of course, govern." *Allen* v. *Almy,* 87 Conn. 517, 525, 89 Atl. 205.   That a right of survivorship as between the two daughters of the testator is created by the will in question, is pressed by appellants' counsel and lies at the foundation of several of his claims.

There is nothing in the will whereby provisions as to one person surviving another, an estate of survivorship, technically so-called, is created.   The use of the words "surviving" and "survived," does not of itself create such an estate.   These words are used in paragraph eight of the will simply to designate a person who has lived after the death of another, or to indicate the facts of such continuance of life.   Also, as a prerequisite of an estate of survivorship, there must exist a joint tenancy in the beneficiaries to be affected by the testamentary disposition.   In this will no joint estate in the residuum is created in favor of the two daughters of the testator.   The whole residuum is

given to the use of the widow for her life, and at her death it is to be equally divided between her two daughters named, "one-half to each of them, their heirs and assigns forever."

In *White* v. *Smith*, 87 Conn. 663, 89 Atl. 272, there was a devise over in fee simple to three children of the brother of the testatrix after the decease of certain life tenants, "or as many as may be living at that time," to be divided equally. On page 676 we say, negativing a claim of joint tenancy and survivorship: "The two of the three children who survived the testatrix did not take as joint tenants. The gift was to persons *nominatim* to be divided equally between them. These features are indicative of a tenancy in common, and there is nothing in the will to suggest that the testatrix intended to create a joint tenancy, a tenancy not favored in the law." In *Houghton* v. *Brantingham*, 86 Conn. 630, 639, 86 Atl. 664, speaking of joint tenancies, we said: "Where such tenancies are recognized, if a testator makes a bequest to two in language adequate to create a joint tenancy, but adds that the subject of the bequest is to be divided equally between the legatees, it is held that these words create a tenancy in common." In the instant case there is nothing in the language of the will to create a joint estate, and even had there been language adequate for that purpose the subsequent direction to divide the residuum would plainly indicate a tenancy in common in the two daughters prior to the actual division.

Proceeding to the other questions involved in the construction of the will, we find that paragraph eight of the will stands by itself as a full and sufficient disposition of the residue of testator's estate. The only matter in the other portions of the will of value by way of interpretation, is the fact that provision is made

therein for his five sons, and that his primary intent was to give to his daughters the residue.

Before considering the nature of the title created in testator's two daughters, it is convenient to determine the point at which their several interests came into being by virtue of the provisions of paragraph eight of the will, that is, whether their estates were vested or contingent, and if vested when did the vesting occur. We are constrained to hold that each daughter took a vested interest at the death of the testator in one half of the residuum of the estate, which interest was liable to defeat by either of two conditions, neither one of which actually occurred. The first condition in the paragraph under consideration is to this effect: "but if either of my said daughters shall die before my decease or that of my said wife leaving no child or children them surviving." This condition is ineffective because one of the daughters is still living, and the other died leaving a child who survived her grandmother, the widow of the testator. The second condition provides "but in case of the death of both of my said daughters . . . leaving no child or children." This condition has not operated, because one daughter and a child of the other is still living. The above conclusion is sustained by abundant authority. "It may be stated as a general rule, that where a testator creates a particular estate, and then goes on to dispose of the ulterior interest, expressly in an event which will determine the prior estate, the words descriptive of such an event, occurring in the latter devise, will be construed as referring merely to the . . . determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting." 1 Jarman on Wills (6th Amer. Ed. Bigelow) * 756. Applying this rule the author says (p. * 768): "In *Finch* v. *Lane* [L. R. 10 Eq. Cas. 501], the rule was applied to a

case where the apparent contingency was, not the devisee attaining a particular age, but his surviving the person to whom a [part] prior estate was devised. The devise was to the testator's wife for life, with remainder, as to part, to his brother for life, and from and immediately after the death of his wife, subject to his brother's interest in the part, to M. in fee if she should be living at the death of the wife, but if M. should die before the wife without leaving issue, then to other persons: M. died before the widow, but left issue; and it was held by Lord Romilly, that the case was governed by *Phipps* v. *Ackers* [9 Cl. & F. 583], and that M. took a vested remainder." "It is not the uncertainty of enjoyment in the future, but the uncertainty of the right of enjoyment, which makes the difference between a vested and a contingent interest." (4 Kent Com. 206.) *Wiggin* v. *Perkins*, 64 N. H. 36, 39, 5 Atl. 904.

In *Throop* v. *Williams*, 5 Conn. 98, we find confirmation of the principle established in the foregoing citations. Very clear enunciation of the doctrine is contained in *Dale* v. *White*, 33 Conn. 294. To the same effect also is *Austin* v. *Bristol*, 40 Conn. 120. The will considered in this case, after giving a life estate to testator's widow, provided: "Upon the decease of my said wife, I give all my said estate to such of my children as may be living . . . at her decease, and to the issue of those who may have deceased, and to their heirs and assigns forever, to be equally divided among them; " etc. The will contained the further provision that "if none of my children or their lawful issue shall be living at the time of the decease of my said wife, I then give, devise and bequeath all my said estate to William L. Wight," etc. The testator left a widow, four children, and one grandchild, the daughter of a daughter, who had died before his death. The

grandchild died before the death of the widow. This case is strikingly similar to the instant case in its facts as well as in the legal principles involved. It was held that the grandchild took an immediate vested interest under the will, and that upon the death of the widow, that interest became a part of her estate. Claims similar to those made in the case before us were made, and the case was presented with great fulness by eminent counsel, resulting in an exhaustive opinion. In passing upon the clause containing the contingency as to the death of all of testator's children or their lawful issue before the death of the life tenant, the court says that this clause is entirely consistent with an interest vested, but subject to the contingency provided for, and quoting from the decision in *Harrison* v. *Foreman*, 5 Vesey Jr. 207, 209, adds: "There is a vested interest, . . . and the contingency, upon which it is to be divested, never happened. The vested interest therefore remains, as if that contingency had never been annexed to it." Among other cases favoring the above conclusions we have: *Dale* v. *White*, 33 Conn. 294; *White* v. *Smith*, 87 Conn. 663, 89 Atl. 272; *Norton* v. *Mortensen*, 88 Conn. 28, 89 Atl. 882; *Eaton* v. *Eaton*, 88 Conn. 269, 91 Atl. 191. We therefore conclude that the daughter Elizabeth P. Fitzsimmons took under the will a half interest in the residuum of the estate which was vested at her death, and was not subsequently divested, and that distribution thereof was properly made to her estate.

The appellants' counsel in his brief and argument rested his opposition to the judgment in favor of the appellees, apparently upon the idea that the latter were supporting the judgment in the case upon the doctrine of an implied fee tail resulting from a gift to the daughter and a provision over in case she died leaving no child or children surviving the testator's wife.

Such a gift to the child of the daughter would have been implied, had the provision been concerned with the death of the daughter Elizabeth without issue living at her own death, as appears from the leading case of *Turrill* v. *Northrop,* 51 Conn. 33, containing an exhaustive citation and review of prior cases in accord. This principle does not apply, however, to a case like the present, wherein the decisive factor is the death of the beneficiary without a child or children living at the time of the death of some other person. Had facts existed in this case rendering proper the application of the doctrine last referred to, it would not have benefited the appellants. In such a case distribution would properly have been made to the surviving grandchild and not to the estate of the mother.

To quite an extent the brief of appellants stresses the point that there is in the provision under consideration an equivocation rendering the same doubtful, and, as a preliminary to regarding in a favorable light such a claim, cites considerable elementary authority to the point that wills should be construed liberally to effectuate the intent of the testator. The equivocation relied on is the effect of the phrase "leaving no child or children them surviving," and of the other phrase "leaving no child or children at the death of my said wife." The liberality which appellants propose to apply is to strike out these words altogether. Doubtless perceiving that there is absolutely nothing in the provision itself or of any context in the will, to justify such a proceeding, they wish to show certain facts extraneous to the will which might favor such an idea as according with the real intent of the testator. Such facts are set up in the amendment to the sixth reason of appeal, and an attempt was made by them to support the same by the questions asked of two wit-

nesses, all of which were excluded by the court and to the exclusion of which exception was duly taken, as appears in the above statement of facts.

There is nothing in the will to justify an inclusion in the record of the facts so sought to be established. There must first appear upon the face of the will itself some latent ambiguity or equivocation adequate to make doubtful the meaning of the instrument in connection with such facts as are ordinarily presented regarding the relationship of the testator and his beneficiaries, and were presented in the instant case, before further extrinsic facts can be considered. Our rule is sufficiently stated in the headnote to *Jackson* v. *Alsop*, 67 Conn. 249, 34 Atl. 1106, as follows: "Although the object sought in the construction of wills is the intent of the testator, it is nevertheless the intent as expressed in the language used. If that is not ambiguous, either as to the nature of the estate intended to be devised, or as to the person intended as the devisee, no extrinsic evidence is admissible to show a different or unexpressed meaning or intention upon the part of the testator." "While extrinsic evidence may be admitted . . . to make clear the doubtful meaning of language used in a will, it is never admissible, however clearly it may indicate the testator's intention, for the purpose of showing an intention not expressed in the will itself. . . ." *Bryan* v. *Bigelow*, 77 Conn. 604, 614, 60 Atl. 266. "The intent must in every case be drawn from the will, but never the will from the intent." *Fairfield* v. *Lawson*, 50 Conn. 501, 508. "So far as concerns the construction of a will, the question always is, not what the testator meant to say, but what is meant by what he did say." *Weed* v. *Scofield*, 73 Conn. 670, 677, 49 Atl. 22. See also *Lee* v. *Lee*, 88 Conn. 404, 91 Atl. 269; *McDermott* v. *Scully*, 91 Conn. 45, 95 Atl. 350; *Birge* v. *Nucomb*,

93 Conn. 69, 105 Atl. 335; *Day* v. *Webler*, 93 Conn. 308, 105 Atl. 618.

The gist of the argument for appellants upon this point seems to be that events have happened producing a situation not contemplated by the testator, and that therefore the words of the will must be so construed as to effectuate the intent which he probably had in mind. This procedure is entirely inadmissible, especially when it would go to the extent of striking out from the will the words relating to surviving children of each of the daughters. It is assumed that the sole intent of the testator was to provide for his daughters during their lives, and that he was not concerned with providing for any children they might leave. Even if the allegations of this amendment, so far as they state facts rather than conclusions, were found proven, they could not justify the construction of the will claimed by appellants. This amendment could have been successfully attacked by demurrer.

The fact principally relied upon by appellants is that the testator was informed by both of his daughters, and believed, that neither of them intended ever to marry, and with that in view his will was drawn as it stands. Such a suggestion pays a poor compliment to his sagacity, and becomes fanciful when we are asked to consider that with this idea in mind he proceeded to make provision in his will for the event of his daughters having and leaving surviving children, and for the nonsurvival of such children.

There occurs a further suggestion that the claim of the appellants as to the disposition of the property left by the testator to his daughters, when pressed to a logical and possible conclusion, leads to a situation where if both daughters died before the mother, each leaving children surviving the latter, these children would take nothing under their grandfather's will, and

that his sons, their uncles already provided for in the will, would take the whole of the residue also. If the testator contemplated such a result he went out of his way to say something different. What we have before said disposes adversely of the alternative claim of appellants that the residuum of the estate is intestate.

We necessarily conclude that Elizabeth P. Fitzsimmons died seized of a vested remainder in one half of the real property contained in the residuum of the testator's estate, and of an executory interest of the same character in the personalty. The distribution ordered by the Court of Probate was legally correct, and properly affirmed by the Superior Court.

There is no error.

In this opinion the other judges concurred.